IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEONARDO RIVERA,**<br>　　　　　　**Plaintiff,** | **CIVIL ACTION** |
| v. | |
| **CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security**<br>**Administration,**<br>　　　　　　**Defendant.** | **NO.  14-6176** |

**DuBois, J.**                                                                                              **April 29, 2016**

# M E M O R A N D U M

### I.      INTRODUCTION

This case is an appeal from the final decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff Leonardo Rivera's claims for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, and social security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. Presently before the Court are plaintiff's Complaint, and Brief and Statement of Issues in Support of his Request for Review, and the Commissioner's response.

By Order dated June 2, 2015, pursuant to 28 U.S.C. § 636(b)(1)(B), and in accordance with the procedure for the random assignment of social security cases, Local Rule 72.1, this case was referred to United States Magistrate Judge M. Faith Angell for a report and recommendation. On January 29, 2016, Judge Angell issued a Report and Recommendation recommending denial of the request for review and affirmance of the decision of the Commissioner. On February 14, 2016, plaintiff filed Objections to the Report and Recommendation.

For the reasons that follow, the Court rejects the Report and Recommendation. The Court reverses the decision of the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g), awards benefits to plaintiff, and remands to the Commissioner for the limited purpose of calculating the benefits. Judgment is entered in favor of plaintiff and against the Commissioner.

## II.     BACKGROUND

Plaintiff was born on May 3, 1955, and is now sixty years old. R. at 76. Plaintiff's native language is Spanish but he can speak and understand some English. R. at 164, 472. He has a first grade education and is illiterate in both Spanish and English. R. at 164, 170, 472. Prior to the onset of his disability, plaintiff worked as a canner in a manufacturing plant, as a horse handler, and as a construction laborer. R. at 166.

In April 2009, Plaintiff filed a claim for disability insurance benefits and supplemental security income. R. at 22. Plaintiff avers that he became disabled and unable to work as of February 18, 2009. R. at 161. Plaintiff described his medical conditions that limited his ability to work as "diabetes, weak legs, and gets light-headed." R. at 165. He further stated that he had left his most recent job as a canner in a manufacturing plant because he was unable to bend frequently without becoming light-headed. *Id.*[1] He last met the earnings requirement for disability insurance benefits on December 31, 2010. R. at 161.

On June 25, 2009, the Social Security Administration ("SSA") initially denied plaintiff's claim for benefits. R. at 79–86. Plaintiff requested a hearing and the case was assigned to Administrative Law Judge ("ALJ") Richard A. Kelly. R. at 100–04. ALJ Kelly conducted a hearing on July 2, 2010, at which plaintiff was represented by counsel. R. at 41–75. Following the hearing, the ALJ issued a decision on August 6, 2010. R. at 21–28. In that decision, he

---

[1] On the same form, plaintiff stated that he stopped working as of January 23, 2009, due to "lack of work."

2

concluded that plaintiff: (1) had not engaged in substantial gainful activity beginning February 18, 2009, and (2) had severe impairments, namely degenerative disc disease, diabetes mellitus, and obesity. R. at 22. However, ALJ Kelly determined that plaintiff did not have a listed impairment or combination of impairments, and had the residual functional capacity ("RFC") to perform a full range of medium work. R. at 22–23. Based on this determination, he concluded that plaintiff had the capacity to perform available jobs in the national economy and thus was not disabled. R. at 27.

Plaintiff appealed this decision to the SSA's Appeals Council, which denied the request for review on June 20, 2011. R. at 1–4. Plaintiff then filed a Complaint in this Court seeking review of the final agency decision. That action, captioned *Rivera v. Astrue* and identified as Civil Action Number 11-4537, was assigned to the undersigned Judge and referred to United States Magistrate Judge M. Faith Angell for a report and recommendation. Following the filing of a Motion for Remand by the Commissioner, Judge Angell issued a Report and Recommendation dated February 3, 2012, in which she recommended that the case be remanded to the SSA for two purposes: (1) "the ALJ will obtain a state agency medical examiner opinion or a medical expert opinion to assess plaintiff's residual functional capacity based on his alleged impairments"; and (2) "the ALJ will further evaluate Mr. Rivera's past relevant work as a landscaper and obtain vocational expert testimony." By Order dated February 24, 2012, the Court overruled plaintiff's objections, approved and adopted the Report and Recommendation of Judge Angell, and remanded the case to the Commissioner.

On remand, the case was again assigned to ALJ Kelly. He conducted two additional hearings, on July 12, 2013, at which a vocational expert testified, and on December 13, 2013, at which a medical expert for the SSA testified. R. at 632–60. Following these hearings, ALJ Kelly

issued a decision on February 10, 2014. R. at 463–72. In that decision he described the procedural posture of the case as follows:

> This case is before me on remand from the Appeals Council pursuant to a remand from the United States District Court for the Eastern District of Pennsylvania.
>
> Pursuant to the District Court remand order, the Appeals Council has directed me to do the following: give consideration to the claimant's maximum residual functional capacity during the entire period of issue and provide rationale with specific references to evidence of record in support of the assessed limitations; obtain an opinion from a medical examiner or medical expert to assess the claimant's residual functional capacity based on the alleged impairments in accordance with the provisions of 20 C.F.R. 404.1527(f) and 416.927(f) and S.S.R. 96-6p[;] explain the weight given to such opinion evidence; and obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations under the guidelines of S.S.R. 82-41.

R. at 463.

The ALJ concluded that plaintiff: (1) had not engaged in substantial gainful activity beginning February 18, 2009; and (2) had severe impairments, namely degenerative disc disease, minimal degenerative joint disease of the knees, diabetes mellitus, and obesity. R. at 465. He determined that plaintiff did not have a listed impairment or combination of impairments that would automatically qualify him as disabled. R. at 470.

ALJ Kelly also concluded that plaintiff had the RFC to perform a "range of medium work with seizure precautions," meaning that plaintiff could stand or walk for six hours in an eight-hour workday, and lift or carry fifty pounds occasionally and twenty-five pounds frequently, but required a position with no heights or use of machinery. R. at 470–472. This conclusion was based on a review of plaintiff's treatment records and the opinion evidence of the SSA's medical expert. R. at 471–72. With respect to plaintiff's testimony and his medical records, the ALJ stated:

4

> I find that claimant's medically determinable impairments could reasonably be expected to cause only some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible . . . .

R. at 471. Specifically, ALJ Kelly found that there was "insufficient evidence to support allegations of difficulty walking and numbness in the feet." *Id.* ALJ Kelly gave no weight to the opinion evidence from a nurse practitioner who examined plaintiff. R. at 471-72. Instead, he relied on the opinion of the SSA's medical expert that plaintiff could perform the "full range of medium work." R. at 472.

Based on the conclusion that plaintiff was able to perform a range of medium work and taking into account plaintiff's first grade education, illiteracy, and previous unskilled work experience, ALJ Kelly determined that plaintiff could perform jobs that exist in significant numbers in the national economy. R. at 473. Specifically, based on the testimony of the SSA's vocational expert, ALJ Kelly concluded that plaintiff could work as a sandwich maker or coffee maker. R. at 473. For these reasons, he denied plaintiff's request for disability insurance and social security income benefits. R. at 473-74.

Plaintiff appealed this decision to the SSA Appeals Council, which denied the request for review on September 24, 2014. Plaintiff initiated this action on October 24, 2014, and filed his Complaint requesting review of the Commissioner's decision on November 4, 2014. Plaintiff filed his Brief and Statement of Issues in Support of Request for Review on May 1, 2015, and the Commissioner filed a Response on June 2, 2015. By Order dated June 2, 2015, pursuant to 28 U.S.C. § 636(b)(1)(B), this case was again referred to Magistrate Judge Angell for a report and recommendation. On January 29, 2016, Judge Angell issued a Report and Recommendation in which she recommended denial of the request for review and affirmance of the decision of the

Commissioner. On February 14, 2016, plaintiff filed Objections to the Report and Recommendation. The Commissioner filed a Reply to the Objections on February 29, 2016.

### III. LEGAL STANDARD

Under the Social Security Act, a claimant is disabled if he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505. There is a two-pronged test for social security disability: "(1) determination of the extent of disability; and (2) determination whether that impairment results in inability to engage in substantial gainful activity." *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). A claimant bears the initial burden of proving the existence of a disability and satisfies this burden by showing that he is unable to return to his customary occupation. *Id.* (citing 42 U.S.C. § 423(d)(5)). Once a claimant satisfies this burden, the burden of proof shifts to the Commissioner to show that the claimant, given his age, education, and work experience, has the capacity to perform specific jobs that exist in the national economy. *Id.*

The Commissioner uses a five-step analysis to evaluate disability claims, which requires her to consider, in sequence, whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can perform past relevant work; and (5) if not, can perform other work in view of his age, education, and work experience. 20 C.F.R. § 404.1520; *see McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

Judicial review of the Commissioner's final decision is limited. The Court reviews the Commissioner's denial of benefits to "determine whether it is supported by substantial evidence

on the record as a whole." *McCrea*, 370 F.3d at 359. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Although substantial evidence is more than a mere scintilla, it need not rise to the level of a preponderance." *Id.* at 359-60 (quoting *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 (3d Cir. 2003)).

Under 42 U.S.C. § 405(g) the Court may affirm, modify, or reverse the decision of the Commissioner, with or without remand to the Commissioner. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984). Reversal, rather than remand, is appropriate where there are serious defects in the record and the Commissioner has repeatedly failed to meet her burden of proof. *Id.* at 222. The Court should only reverse and award benefits "when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 549 (3d Cir. 2003).

A district court reviews *de novo* those portions of the report and recommendation of a magistrate judge to which an objection is filed. 28 U.S.C. § 636(b)(1)(C). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

**IV.    DISCUSSION**

Upon consideration of the record as a whole, the Court concludes that there is substantial evidence that plaintiff is disabled and unable to engage in substantial gainful activity, and therefore reverses the decision of the Commissioner and awards the benefits sought by plaintiff. Plaintiff is now sixty years of age, has a first grade education, and his only previous work experience is in manufacturing and construction. The medical evidence demonstrates that plaintiff suffers from degenerative disc disease, minimal degenerative joint disease of the knees,

obesity, and diabetes, which causes symptoms of diabetic neuropathy including numbness and pain in the feet. The Commissioner's determination that plaintiff has the residual functional capacity ("RFC") to engage in a range of medium work—requiring plaintiff to stand or walk for six hours in an eight-hour workday, and lift or carry fifty pounds occasionally and twenty-five pounds frequently—is not supported by substantial evidence. To the contrary, there is substantial evidence that plaintiff cannot engage in medium work as defined by Social Security regulations as of the onset date, and therefore that plaintiff is unable to perform other jobs that exist in the national economy in light of his age, education, and previous work experience.[2]

### A. Medical Evidence of Plaintiff's Disability

The ALJ concluded that plaintiff suffered from the severe impairments of degenerative disc disease, minimal degenerative joint disease of the knees, diabetes mellitus, and obesity. R. at 467–69. The parties do not dispute the ALJ's determination that plaintiff suffers from these severe impairments. The Court concludes that the ALJ's identification of plaintiff's severe impairments is supported by substantial evidence.

### B. Plaintiff's Residual Functional Capacity and Ability to Perform Other Work

Despite plaintiff's severe impairments, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a range of medium work and therefore that he was not disabled because jobs existed in substantial numbers in the national economy that plaintiff could perform. The Court concludes that the ALJ's determination that plaintiff could perform a range

---

[2] The Court notes that, even under the ALJ's conclusions, at this time, because of his age, plaintiff is automatically classified as disabled under the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. Plaintiff has a marginal education, his prior work was unskilled, and the ALJ concluded he was limited to medium work. Thus, because plaintiff is now age sixty, and classified as "closely approaching retirement age," he would automatically be deemed disabled under § 203.01 of the Medical-Vocational Guidelines.

of medium work is not supported by substantial evidence. Rather, the Court determines that substantial evidence, including the testimony of the Commissioner's vocational and medical experts, demonstrates that plaintiff is unable to perform a range of medium work and therefore is disabled.

*1. Plaintiff's Prior Work Experience and Vocational Expert Testimony*

The Court previously remanded this case in 2012 at the request of the Commissioner, in part to allow the Commissioner to further evaluate plaintiff's past relevant work and obtain vocational expert testimony. Plaintiff previously worked as a canner in a manufacturing plant, a construction worker, and a horse handler. The parties agree that this prior work would be deemed "very heavy" under SSA regulations and that plaintiff is unable to return to any of his prior work due to his severe impairments.

The ALJ concluded that because plaintiff's prior work was unskilled there was no possibility of transferability of job skills to new work. R. at 472–73. In addition, while plaintiff can communicate verbally in English, he is illiterate in English and Spanish. R. at 472. Plaintiff attended school only through first grade. R. at 472.

On remand, a vocational expert, Christine Harrisous Lusarsky, testified. At the hearing, the ALJ provided Ms. Lusarsky with the following hypothetical of a claimant:

> The vocational profile is an individual who is over 50 – well he is over 50 at all times . . . . He has a very limited education. [He] does understand some English. I don't think he can read English though. The prior work, you just identified for overall physical capacity for the first RFC will be a range of medium with seizure-like precautions. No working at heights; moving machinery; ladders; things like that. With that, could any jobs be maintained?

R. at 645. In response, Ms. Lusarsky testified that given an RFC of "a range of medium work with seizure-like precautions" there were identifiable positions that existed in significant

9

numbers, specifically "sandwich maker in a restaurant or deli" and "coffee maker." R. at 646.

The ALJ then asked a follow-up question:

> Same vocational profile, but I'm going to add in features of the diabetic neuropathy, which would cause difficulty walking and standing because of the numbness in the feet. And once again the same thing with the seizure precautions. With that in the vocational profile, would any jobs be maintainable?

R. at 647. Ms. Lusarsky answered that question by stating "no, not at – certainly not at medium." R. at 647.

Based on the testimony of Ms. Lusarsky, plaintiff would not have the RFC to perform jobs that exist in a significant number in the national economy unless he was able to perform a range of medium work without symptoms of diabetic neuropathy, specifically numbness in the feet causing difficulty walking and standing.[3] As will be discussed below, there is substantial evidence of record that plaintiff has symptoms of diabetic neuropathy and therefore does not have the RFC to perform the jobs identified by the vocational expert.

### 2. *Medical Opinion of Examining Certified Registered Nurse Practitioner Rebecca Bixby*

The Court concludes that the ALJ improperly rejected the opinion of Certified Registered Nurse Practitioner Rebecca Bixby, who examined and treated plaintiff on numerous occasions. The ALJ explained:

> In April 2012, Rebecca Bixby, CRNP, completed an Employability Assessment Form for the Department of Public Welfare indicating that the claimant was temporarily disabled from January 1, 2012, to January 1, 2013, due to diabetes with neurological manifestations and atherosclerosis with claudication. I note that the definition of disability is different for welfare purposes than under Social Security regulations. Additionally, the opinion as to whether a claimant is disabled for Social Security purposes is reserved for the Commissioner.

---

[3] In addition, if plaintiff were unable to perform medium work, and therefore limited to light work, he would be disabled under the Medical-Vocational Guidelines because he was closely approaching advanced age at the time he applied for benefits, is illiterate, and his previous work was unskilled. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.09.

>Furthermore, a nurse practitioner is not an acceptable medical source. Accordingly, I have given no weight to Ms. Bixby's opinion.

R. at 471–72. None of these rationales provides a valid basis for failing to consider Ms. Bixby's opinion as plaintiff's examining and treating nurse practitioner.

SSA regulations provide that an opinion of a Certified Registered Nurse Practitioner is not an acceptable medical source to "establish whether you have a medically determinable impairment." 20 C.F.R. § 404.1513(a). However, SSA regulations provide that the opinions of nurse practitioners may be used "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work . . . ." 20 C.F.R. § 404.1513(d). "[A] nurse practitioner's opinion cannot be given controlling weight. However, an ALJ may consider a non-acceptable medical opinion to assess severity of impairments and functional effect, and may reject or accept the opinion after explaining the reasons for doing so." *Weidman v. Colvin*, Civil Action No. 14-552, 2015 WL 5829788, at *10 (M.D. Pa. Sept. 30, 2015) (citing *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000)).

The ALJ's decision to afford Ms. Bixby's opinion "no weight" in the RFC analysis merely because a nurse practitioner is not an acceptable medical source to *establish* impairment was clear error. The ALJ correctly concluded that severe impairment was established, and Ms. Bixby's opinion was therefore relevant to show the severity of those impairments and their effect on plaintiff's ability to work. *See* 20 C.F.R. § 404.1513(d). Thus, the ALJ erred by rejecting Ms. Bixby's opinions as to the severity of plaintiff's diabetes and its effect on plaintiff's ability to work solely because Ms. Bixby is a nurse practitioner.

Furthermore, the ALJ erred by rejecting all of Ms. Bixby's opinions simply because she completed an Employment Assessment Form as part of plaintiff's application for state welfare benefits. Ms. Bixby examined and treated plaintiff on multiple occasions and her opinions are

11

stated in her contemporaneous treatment notes, not only in the Employment Assessment Form. For example, after examining plaintiff on June 11, 2012, Ms. Bixby found pain and reduced sensation in both of plaintiff's feet and recorded this in her treatment notes. R. at 884. During another visit, on February 21, 2013, Ms. Bixby found reduced sensation in a monofilament exam of plaintiff's feet, demonstrating numbness of both feet and pain. R. at 865. On November 5, 2013, Ms. Bixby noted "diabetes mellitus [with] neurologic manifestations" in a "History and Physical Report" and changed plaintiff's prescribed medications to treat that condition. R. at 1054–55. Thus, even if Ms. Bixby's opinion on the Employment Assessment Form, R. at 621, was properly disregarded, the ALJ improperly disregarded Ms. Bixby's opinions contained in her contemporaneous notes in the context of her role as an examining and treating nurse practitioner.

### 3. *Medical Evidence of Neuropathy and Medication Control*

The ALJ concluded that plaintiff could perform medium work because there was "insufficient evidence to support allegations of difficulty walking and numbness in the feet." R. at 471. Contrary to the ALJ's conclusions, the record is replete with evidence that plaintiff suffers from symptoms of diabetic neuropathy, specifically numbness and pain in his feet and legs. R. at 237–38, 294–95, 317, 326, 378, 396, 398, 405, 412, 418, 865, 884, 893. Treatment notes from as early as 2009 and 2010 demonstrate that plaintiff presented complaints of numbness and pain in his feet and legs. On August 12, 2009, during a follow-up evaluation for diabetes, plaintiff complained of "shock-like pain radiating from hip to left knee when standing for prolonged periods." R. at 317. Following an examination on September 24, 2009, plaintiff's treating physician, Dr. Craig G. Smucker, noted symptoms of diabetic neuropathy and recommended that plaintiff be seen by an endocrinologist because "his diabetic neuropathy is certainly the harbinger of greater problems to come." R. at 295. Subsequent opinions of treating

physicians demonstrate that plaintiff suffers from symptoms of diabetic neuropathy. Among them, Dr. Herman Michael, who examined plaintiff on June 22, 2012, observed that plaintiff had "leg burning that may be diabetic neuropathy." R. at 1004–5.

The observations of treating non-medical sources also support the finding that plaintiff has symptoms of diabetic neuropathy, specifically numbness in his feet. For example, as noted above, on several occasions Ms. Bixby diagnosed plaintiff with symptoms of diabetic neuropathy and prescribed treatment accordingly. R. at 865, 884, 1054–55. On December 19, 2011, Certified Registered Nurse Practitioner Marguerite Harris also found symptoms of diabetic neuropathy on physical exam, specifically numbness in the feet. R. at 904. As a result of this finding, Ms. Harris diagnosed plaintiff with "diabetes mellitus with neurologic manifestations." R. at 905.

Furthermore, the ALJ's opinion that plaintiff's symptoms are well-controlled by medication is contradicted by the medical evidence that plaintiff is unable to take his medications for neuropathy due to his chronic kidney disease. Reports from plaintiff's treating physicians state that plaintiff was taken off many of these medications due to his kidney disease and that his neuropathy worsened as a result. R. at 891, 1004.

    4.  *Testimony of Medical Expert Dr. Darius Ghazi*

On remand, the ALJ also received testimony from Dr. Darius Ghazi, a medical expert. Dr. Ghazi did not examine plaintiff, but did review all of plaintiff's medical records. R. at 652. When asked by the ALJ to review his "principle diagnosis," Dr. Ghazi testified as follows:

> [T]his gentleman is 60 years of age – 58 years of age. And he is . . . obese, and suffers from Type II diabetes. And . . . he has some age appropriate condition in his back and his knees, and his hip, which was diagnosed as a bursitis. And the hip joint itself is uninvolved. And the picture is very similar to diabetic neuropathy because he does not have any major joint involvement to render him, much less scale for the disabled. He has some degenerative joints as in his knees. And he has physical supplementation for that, which is a major to provide relief,

which has been effective in him. But I think his problem is basically diabetic neuropathy, and he's been treated as such.

R. at 653–54. Dr. Ghazi then testified as to the symptoms of diabetic neuropathy, and stated that it causes "numbness, tingling, and seldom needle pinning of the skin and pain." R. at 654.

In a follow-up question, the ALJ asked whether plaintiff's medication was effective in managing the symptoms of diabetic neuropathy:

> Q: Any indication as to whether or not these medications have been effective?
> A: They have been, yes.

R. at 654.

Dr. Ghazi testified that plaintiff's principle diagnosis is diabetic neuropathy, but that the medications taken by plaintiff were "effective" in the treatment of the symptoms of diabetic neuropathy. However, the ALJ did not ask Dr. Ghazi what symptoms plaintiff would continue to suffer despite the medication and Dr. Ghazi did not opine on any remaining effect the diabetic neuropathy would have on plaintiff's ability to work. Furthermore, Dr. Ghazi's testimony that plaintiff's neuropathy symptoms are well controlled by medication is contradicted by the conclusion of plaintiff's treating physicians that plaintiff is unable to take many neuropathy medications due to his kidney disease. R. at 891, 1004.

In denying plaintiff benefits, the ALJ relied heavily on Dr. Ghazi's opinion on RFC:

> Dr. Ghazi further testified that, despite the above impairments and findings, the claimant remains able to perform the full range of medium work. I adopt the expert opinion of Dr. Ghazi because it is well supported by the records . . . . In sum, the above residual functional capacity is supported by Dr. Ghazi's opinion.

R. at 472. The Court concludes that Dr. Ghazi's opinion on RFC cannot bear the weight placed on it by the ALJ.

The ALJ asked Dr. Ghazi only one question regarding RFC:

> Q: When the state agency reviewed this, they weren't too impressed. And they found basically an RFC, I think, or a range of medium work. Would you agree or disagree with that?
> A: I agree with that, yes.

R. at 655. The ALJ did not review with Dr. Ghazi the definition of medium work, nor did he explain the state agency findings to Dr. Ghazi. As plaintiff notes in his response, to the extent that Dr. Ghazi was agreeing with the state agency finding that plaintiff was not disabled, he could not have been concluding anything regarding the SSA's definition of medium work. The state agency Development Summary Worksheet, included in the administrative record reviewed by Dr. Ghazi, includes only medical diagnoses and no opinions relevant in any way to an RFC analysis, other than the conclusion that plaintiff is not disabled. *See* R. at 192–95.[4]

In concluding that plaintiff was able to perform a range of medium work, the ALJ did not lay a proper foundation for Dr. Ghazi to opine on RFC based on the SSA's regulation. The ALJ failed to ask Dr. Ghazi specific questions about plaintiff's RFC and failed to explain what medium work entailed, specifically that medium work would require plaintiff to stand for six hours in an eight-hour work day. Dr. Ghazi was not qualified to opine, without further foundation, as to whether plaintiff could perform medium work as defined by the regulations. To the extent Dr. Ghazi was opining that plaintiff was not disabled, this was a legal conclusion and not properly the subject of expert testimony.

Furthermore, Dr. Ghazi's opinion that plaintiff suffered from diabetic neuropathy is inconsistent with his RFC opinion, in light of Ms. Lusarsky's testimony that a person with symptoms of diabetic neuropathy would be unable to engage in medium work. Dr. Ghazi's answer to the ALJ's single question concerning RFC is inconsistent with his medical opinion

---

[4] To the extent that Dr. Ghazi was agreeing with the opinion in the Development Summary Worksheet that plaintiff's "impairments are minimal," R. at 195, this conclusion would be contrary to the ALJ's determination that plaintiff suffers from severe impairments. R. at 466–68.

15

regarding plaintiff's disability. Therefore, the ALJ erred in concluding that Dr. Ghazi's opinion supported the conclusion that plaintiff could perform a full range of medium work.

### 5. RFC and Ability to Work

The ALJ concluded that plaintiff was not disabled because he could perform the requirements of the representative unskilled occupations at medium exertion of sandwich maker and coffee maker. R. at 473. In reaching this conclusion, the ALJ necessarily relied on Dr. Ghazi's opinion that plaintiff could perform a range of medium work. R. at 472. However, as discussed above, Dr. Ghazi's opinion on RFC must be rejected for lack of foundation with respect to the definition of medium work. Thus, the Court considers whether the record as a whole, aside from Dr. Ghazi's RFC opinion, provides substantial evidence in support of the ALJ's conclusion that plaintiff could perform the jobs described. The Court concludes that it does not.

The Commissioner's vocational expert testified that there were no jobs available in the national economy in substantial numbers at medium exertion if plaintiff suffered from numbness in his feet due to diabetic neuropathy. R. at 647. The record contains substantial evidence that plaintiff suffers from diabetic neuropathy causing pain and numbness in the feet and legs. As discussed above, plaintiff's medical records and the opinions of treating non-medical sources like Ms. Bixby support this conclusion. The evidence relied on by the ALJ is the testimony of the Commissioner's medical expert, Dr. Ghazi, which does not contradict the other evidence because Dr. Ghazi concluded that plaintiff's "principle diagnosis" was "diabetic neuropathy." Furthermore, Dr. Ghazi testified that the principal symptoms of this diagnosis were "numbness, tingling, and seldom needle pinning of the skin and pain." This diagnosis, in combination with

the vocational expert's testimony, demonstrates that plaintiff is unable to perform the jobs identified by the ALJ.

Plaintiff is sixty years old, is illiterate, and has a first grade education. His prior work experience was in strenuous, unskilled jobs, and he cannot return to such employment due to his impairments, including degenerative disc disease, minimal degenerative joint disease of the knees, diabetes mellitus, and obesity. Based on the evidence of diabetic neuropathy contained in plaintiff's treating records, opinions from his treating physicians, and the opinions of non-medical sources like Ms. Bixby, in light of the testimony of the vocational expert, the Court concludes that there is substantial evidence in the record that plaintiff is unable to perform medium work because of symptoms of diabetic neuropathy, namely numbness and pain in his feet. In light of his advanced age, marginal education, and prior work experience solely in jobs requiring very heavy exertion, the Court determines that the Commissioner has failed to meet her burden of presenting substantial evidence that plaintiff is able to perform jobs that exist in significant numbers in the national economy. To the contrary, plaintiff has a severe impairment that results in the inability to perform substantial gainful activity and therefore is disabled.

### C. Remedy

The Court concludes that reversal and an award of benefits, rather than a remand to the Commissioner, is the appropriate remedy in this case. The decision to award benefits "should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221–22. An award of benefits is appropriate if there have been long delays "caused by deficiencies that are not attributable to any error of the claimant." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

Plaintiff made his first claim for benefits in 2009, almost six years ago. The case has already been remanded once, at the request of the Commissioner, for the purpose of obtaining further testimony from a vocational expert and a medical expert on issues related to plaintiff's RFC. The Court concludes that a further remand would be unlikely to further develop the already-voluminous record. The Commissioner has now failed twice to meet her burden of producing substantial evidence that plaintiff can perform specific jobs that exist in the national economy. As explained above, there is substantial evidence in the record that plaintiff is unable to perform medium work due to symptoms of diabetic neuropathy and therefore is disabled under the SSA's Medical-Vocational Guidelines. 20 C.F.R. Part 404, Subpart P, App. 2 § 202.09.

## V.     CONCLUSION

For the foregoing reasons, the Court rejects the Report and Recommendation of Magistrate Judge M. Faith Angell dated January 29, 2016. Because "substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits," *Newell*, 347 F.3d at 549, the Court reverses the decision of the Commissioner, pursuant to the fourth sentence of 42 U.S.C. § 405(g), awards benefits, and remands the case to the Commissioner for the limited purpose of calculating benefits. Judgment is entered in favor of plaintiff and against the Commissioner. An appropriate order follows.